IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MAE HELEN GOODWIN,

    Plaintiff,                                    CIV. NO. S-09-3191 MCE GGH PS

    vs.

CALIFORNIA RECONVEYANCE COMPANY, et al.,

    Defendants.                               FINDINGS AND RECOMMENDATIONS

/

        Plaintiff is proceeding pro se in this action, referred to the undersigned pursuant to Local Rule 72-302(c)(21). Previously pending on this court's law and motion calendar for June 24, 2010 was defendants' motion to dismiss, filed April 14, 2010. Plaintiff did not file an opposition but did appear at the hearing. Defendants were represented by Matthew Hansen, who appeared telephonically. Having heard oral argument and reviewed the papers in support of the motion, the undersigned now issues the following order and findings and recommendations.

BACKGROUND

        This foreclosure action was removed from state court to this court on November 16, 2009, by defendants California Reconveyance Company ("CRC") and JPMorgan Chase Bank, N.A. ("JPMorgan"), for itself and acquirer of certain assets and liabilities of Washington Mutual Bank from the FDIC acting as Receiver, erroneously sued as Chase Bank. The complaint alleges claims for violations of TILA (15 U.S.C. § 1611), RESPA (26 U.S.C. § 2605), HOEPA (15 U.S.C. § 1602), FDCPA (15 U.S.C. § 1692), breach of fiduciary duty, breach of the covenant

1

of good faith and fair dealing, injunctive and declaratory relief, and fraud.  Defendants move to dismiss for failure to state a claim in regard to all claims, for failure to specifically plead fraud, and that JPMorgan did not assume any liabilities arising from claims by borrowers of Washington Mutual Bank.

This matter was originally scheduled for hearing on May 27, 2010; however, after plaintiff failed to oppose the motion or file a statement of non-opposition, this court issued an order to show cause why sanctions should not be imposed for this failure.

Plaintiff did not respond to the court's order to show cause; however, she appeared at the hearing.  She explained only that she was working with someone on this case but their communication was not good so she did not respond to the order.  Pro se status does not by itself constitute good cause; however, because plaintiff appeared at the hearing the order to show cause will be discharged and sanctions will not be imposed.

At the hearing, defendants were instructed to provide plaintiff with information on assistance she could use to try to keep her house.  The parties were given two weeks after the hearing in which to file statements with the court indicating their efforts toward this end.  Defendants gave her a phone number and mailed her an application for loan modification that day, as evidenced by their filing of July 8, 2010. (Docket # 18, Ex. A.)  In that filing, defendants indicated that plaintiff had not submitted the loan modification application or contacted defendants with any questions concerning the application.  Plaintiff also failed to file a statement as ordered by the court.  Therefore, in light of plaintiff's utter failure to respond to a court ordered extension in which to oppose defendants' motion or to take advantage of defendants' offer of assistance in modifying her loan and filing a court ordered statement in that regard, the undersigned has no choice but to recommend dismissal.

MOTION TO DISMISS

    I.  Legal Standard for Motion to Dismiss

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S. Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).  The court need not accept legal conclusions "cast in the form of factual allegations."

Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

## II.  Assumption of Liability by JPMorgan

When JPMorgan took over Washington Mutual's assets, it did not assume liabilities of the kind alleged by plaintiff. Article II of the Purchase and Assumption Agreement provides in part:

> 2.5 Borrower Claims - Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, ... are specifically not assumed by the Assuming Bank.

(Defs.' RJN Ex. 5 at 9.)

Based on the aforementioned agreement, any allegation in the complaint which assumes that JPMorgan took over any alleged liabilities of Washington Mutual cannot be maintained.

## III.  Truth in Lending Act

Plaintiff's TILA claim seeks damages from defendants on the ground that defendants violated TILA's disclosure obligations by failing to make a full accounting, failing to provide disclosures regarding finance charges and fees, improperly retaining funds belonging to plaintiff, and failing to disclose the status of the ownership of the loans. (Compl., ¶ 21.) The alleged violations pertain to plaintiff's mortgage for which the loan agreement was entered into on or about January 19, 2007. (Id. at ¶ 7.)

Defendants first contend that because they were not the originating lender or assignee, they cannot be held liable under TILA. TILA establishes a private right of action and provides for statutory damages for violations of TILA only against the creditor (the owner of the obligation) and assignees. 15 U.S.C. § 1640(a). As it is unclear whether defendants were

assignees in regard to TILA, see discussion *infra*, this argument will not be addressed.

Rather, it is evident that plaintiff's TILA claim is barred by TILA's one year statute of limitations for damages claims. 15 U.S.C. § 1640(e). Here, plaintiff's TILA claim arises in part out of failure to make required disclosures at the time the loan was entered, which was on or around January 19, 2007. (Compl. ¶ 7; RJN Exs. 1, 2.) The limitations period began to run at that time, King v. California, 784 F.2d 910, 914 (9th Cir. 1986), and would normally have expired on January 19, 2008. Plaintiff's complaint was filed in state court on October 15, 2009.

Although TILA's limitations period for civil damages may be equitably tolled, King, 784 F.2d at 915, and subject to equitable estoppel, Ayala v. World Sav. Bank, FSB, 616 F. Supp. 2d 1007 (C.D. Cal. 2009), plaintiff does not argue that either of these doctrines apply here. Nor does the complaint allege facts showing the potential applicability of the equitable tolling doctrine. See Cervantes v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir. 1993); Morales v. City of Los Angeles, 214 F.3d 1151, 1153, 1155 (9th Cir. 2000). Therefore, plaintiff's TILA claim is time barred.

Plaintiff's claim for rescission is not time barred[1]; however, the Ninth Circuit has held that rescission under TILA "*should* be conditioned on repayment of the amounts advanced by the lender." Yamamoto v. Bank of N.Y., 329 F. 3d 1167, 1170 (9th Cir. 2003) (emphasis in original). District courts in this circuit have dismissed rescission claims under TILA at the pleading stage based upon the plaintiff's failure to allege an ability to tender loan proceeds. See, e.g., Garza v. Am. Home Mortgage, 2009 WL 188604 at *5 (E.D. Cal. 2009) (stating that "rescission is an empty remedy without [the borrower's] ability to pay back what she has received"); Ibarra v. Plaza Home Mortgage, 2009 WL 2901637 at *8 (S.D. Cal. 2009); Ing Bank v. Korn, 2009 WL 1455488 at *1 (W.D. Wash. 2009). In this case, plaintiff has failed to allege

---

[1] An action for rescission must be brought within three years after the date of consummation of the transaction. 15 U.S.C. § 1635(f).

any facts relating to her ability to tender the loan proceeds, or that she in fact ever tendered the loan proceeds.[2]

### IV. RESPA

Defendants next contend that plaintiff's claim under the Real Estate Settlement Procedures Act (" RESPA") is defective because plaintiff has not alleged any facts specifying compliance with 26 U.S.C. § 2605(b).[3] The complaint alleges only that defendants "placed loans for the purpose of unlawfully increasing or otherwise obtaining yield spread fees and sums in excess of what would have been lawfully earned," and that Washington Mutual as a servicer, "violated the requirements of [12] U.S.C. § 2605(B) in that the servicing contract or duties have under were transferred or hypothecated without the required notice." [Sic]. (Compl. ¶¶ 28, 29.)

12 U.S.C. § 2605(b) provides that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing loan to any other person." Plaintiff, however, fails to allege what actual damages she suffered as a result of a failure of notice under subsection (b). See 12 U.S.C. § 2605(f). For this reason, plaintiff fails to state a claim under RESPA.

### V. Home Ownership and Equity Protection Act of 1994

Plaintiff alleges that defendants induced her into default by placing the loan in violation of HOEPA because it "was placed and administered and otherwise utilized without regard to Plaintiff's income or cash flow." (Compl. ¶ 35.) Defendants argue that HOEPA does not protect this transaction because a violation requires an annual percentage rate that exceeds by more than ten percentage points the yield on Treasury Securities with comparable periods of maturity, or that the total points and fees charged to the consumer exceeds greater than eight percent of the total loan amount or $400. 15 U.S.C. § 1602(aa)(1), (3).

---

[2] Contrary to defendants' remaining argument in regard to TILA, plaintiff did allege a pecuniary loss. See Compt. at 19.

[3] The parties intend to refer to Title 12, not Title 26.

Defendants' argument need not be reached, however, as plaintiff's loan is exempted from HOEPA. The HOEPA in part prohibits the extension of credit without regard to the consumer's ability to pay. 15 U.S.C. § 1639(h):

> A creditor shall not engage in a pattern or practice of extending credit to consumers under mortgages referred to in section 1602(aa) of this title based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment.

Section 1602(aa) expressly excludes residential mortgage transactions. 15 U.S.C. § 1602(aa). "A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction...." Id.

> The term 'residential mortgage transaction' means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.

Id., §1602(w).

The loan plaintiff obtained was a loan upon which a deed of trust was recorded. Therefore, plaintiff's loan constitutes a residential mortgage transaction. Plaintiff's claim under HOEPA is therefore legally deficient and must be dismissed without leave to amend.

    VI.  <u>Federal Debt Collections Practices Act (15 U.S.C. § 1692)</u>

Plaintiff alleges violations of the FDCPA by asserting that defendants are debt collectors and they did not respond to her requests for validation of the debt. (Compl. ¶¶ 39-41.) Defendants move to dismiss this claim based on the inapplicability of this act.

In 1977 Congress enacted the Fair Debt Collection Practices Act (FDCPA) in response to national concern over "the use of abusive, deceptive and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). The purpose of the FDCPA is "to

7

1  protect consumers from a host of unfair, harassing, and deceptive debt collection practices

2  without imposing unnecessary restrictions on ethical debt collectors." S. Rep. No. 382, 95th

3  Cong., 1st Sess. 1-2, reprinted in 1977 U.S. Code Cong & Ad. News 1695, 1696.

> The FDCPA defines debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes ..." 15 U.S.C. § 1692a(5); see also Bloom v. I.C. Sys. Inc., 972 F.2d 1067, 1068-69 (9th Cir.1992) (explaining that the FDCPA applies to debts incurred for personal rather than commercial reasons). The Act defines "consumer" as "any natural person obligated ... to pay any debt." Id. § 1692a(3). The Act does not define "transaction," but the consensus judicial interpretation is reflected in the Seventh Circuit's ruling that the statute is limited in its reach "to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services." Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1326 (7th Cir.1997) (citing Shorts v. Palmer, 155 F.R.D. 172, 175-76 (S.D.Ohio 1994).

Turner v. Cook, 362 F.3d 1219, 1227 (9th Cir. 2004).

Under the FDCPA, a "debt collector" "means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6). Excepted is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ...(iii) concerns a debt which was not in default at the time it was obtained by such person ...." 15 U.S.C.A. § 1692a(6)(F).

"[A] debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985), mod. on other grounds, 761 F.2d 237 (5th Cir. 1985). Foreclosure on a property based on a deed of trust does not constitute collection of a debt within the meaning of the FDCPA. Hulse v. Ocwen Federal Bank, FSB, 195 F.Supp.2d 1188, 1204 (D.Or. 2002).

There is authority contrary to Hulse; see e.g., Wilson v. Draper & Goldberg, 443 F.3d 373, 376 (4th Cir. 2006). In Wilson, the Fourth Circuit refused to follow Hulse reasoning that a "debt" remained a "debt" even after foreclosure. Id. While that may be true in the jurisdiction pertinent to the Wilson case, it is not true in California. With exceptions not applicable here, a lender/trustee may *not* seek a deficiency judgment when foreclosing on a property in a non-judicial trustee foreclosure/sale. Cal. Code Civ. P. §§ 580d, 726. Thus, in California, a debt derived from the residential loan transaction does not exist after a non-judicial foreclosure. The court therefore finds Hulse persuasive in its analysis when dealing with California foreclosures.

Based on Hulse authority, plaintiff's claim under the FDCPA must be dismissed without leave to amend.

VII. State Law Claims

As there are no federal claims remaining, this court declines to exercise supplemental jurisdiction over plaintiff's possible state law claims. See 28 U.S.C. § 1367(c)(3) (The district courts may decline to exercise supplemental jurisdiction over a claim ...if – the district court has dismissed all claims over which it has original jurisdiction"); see also, Acri v. Varian Associates, Inc., 114 F.3d 999, 1000-1001 (9th Cir. 1997) (" 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims' "), quoting Carnegie-Mellon University. v. Cohill, 484 U.S. 343, 350, n. 7, 108 S. Ct. 614, 619, n. 7 (1988).

CONCLUSION

Good cause appearing, IT IS RECOMMENDED that: defendants' motion to dismiss, filed April 14, 2010, (docket # 13), be granted, this action be dismissed with prejudice for lack of subject matter jurisdiction, and that the court decline to exercise jurisdiction over plaintiff's state law claims.

These findings and recommendations are submitted to the United States District

1  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within
2  fourteen (14) days after being served with these findings and recommendations, any party may
3  file written objections with the court and serve a copy on all parties.  Such a document should be
4  captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the
5  objections shall be served and filed within fourteen (14) days after service of the objections.  The
6  parties are advised that failure to file objections within the specified time may waive the right to
7  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

8  DATED: 08/20/2010

/s/ Gregory G. Hollows

10  _____
GREGORY G. HOLLOWS
U. S. MAGISTRATE JUDGE

11  GGH:076/Goodwin3191.f&r.wpd